Theresa BEDFORD *v.* STATE of Arkansas

CA CR 04-706 237 S.W.3d 516

Court of Appeals of Arkansas
Opinion delivered June 28, 2006

*S. Butler Bernard, Jr.*, for appellant.

*Mike Beebe*, Att'y Gen., by: *Brad Newman*, Ass't Att'y Gen., for appellee.

KAREN R. BAKER, Judge. This is the second appeal in this revocation case. On November 26, 1996, appellant Theresa Bedford pleaded guilty to forgery and received a ten-year suspended imposition of sentence. The State filed a revocation petition on February 12, 2004, and a revocation hearing was held on March 4, 2004. After the hearing, the trial court found that appellant had violated the conditions of her suspended sentence by failing to pay fines and costs, and by committing a forgery, and entered an order sentencing her to four years in prison.

In the first appeal, appellant's counsel argued that the appeal was wholly without merit pursuant to *Anders v. California*, 386 U.S. 738 (1967) and Rule 4-3(j)(1) of the Rules of the Arkansas Supreme Court and Court of Appeals. In an unpublished opinion, *Bedford v. State*, CACR 04-706 (January 11, 2006), we ordered rebriefing on the grounds that appellant was entitled to an adversarial presentation by her counsel on the issue of whether the trial court's decision to revoke was clearly against the preponderance of the evidence.

In her adversarial brief, appellant presents two arguments for reversal. First, she asserts that the trial court erred in finding that she violated her conditions by failing to pay fines and costs because the written conditions of her suspended sentence did not require such payments. The State concedes error on this point, and we agree. Second, she argues that the trial court erred in finding that she committed a forgery and subsequently violated her probation. We agree and reverse.

The disposition of this case requires the application of permissible inferences by the trial court in the context of a probation revocation based upon an accusation of forgery. The State has the burden to prove a violation of a condition of probation by a preponderance of the evidence. *Lemons v. State*, 310 Ark. 381, 836 S.W.2d 861 (1992). This burden is not as great in a revocation hearing; therefore, evidence that is insufficient for a criminal conviction may be sufficient for revocation. *Bradley v. State*, 347 Ark. 518, 65 S.W.3d 874 (2002). If a court finds by a preponderance of the evidence that a defendant has inexcusably

failed to comply with a condition of his or her probation, it may revoke the probation. Ark. Code Ann. § 5-4-309(d) (Repl. 2006). The trial court's findings will be upheld unless they are clearly against the preponderance of the evidence; and because the determination of a preponderance of the evidence turns on the questions of credibility and weight to be given testimony, on review, the appellate courts will defer to the trial judge's superior position. *Id.*

The State argues that the trial court properly revoked appellant's suspended sentence for attempting to cash a check that was written on a closed account. The State cites Arkansas Code Annotated section 5-37-201(a) (Repl. 2006), which provides:

> A person forges a written instrument if with purpose to defraud he draws, makes, completes, alters, counterfeits, possesses, or utters any written instrument that purports to be or is calculated to become or to represent if completed the act of a person who did not authorize that act.[1]

In its argument, the State contends that the trial court found that appellant's presentation of a check on a closed account was a sufficient basis to revoke her suspended sentence and relies upon the principle that possession of a forged instrument by someone who seeks to utter it without any reasonable explanation of how she acquired it warrants an inference that the possessor committed the forgery. *See Mayes v. State*, 264 Ark. 283, 291, 571 S.W.2d 420, 425 (1978); *DeShazer v. State*, 94 Ark. App. 363, 230 S.W.3d 285 (2006). However, that premise does not apply on the facts of this case because the State failed to prove that the check at issue was a forged instrument.

---

[1] In *Bedford I*, it was noted that appellant pro se asserted that she did not commit a forgery, claiming that no one bothered to check out the information she presented as to her employment, and this was one of the issues we identified in our determination that appellant was entitled to an adversarial brief. The dissent now comments that this very issue was not raised on appeal. In fact, appellant argues that the State failed to prove that appellant violated a State law, cites the statutory definition of forgery and states that "[t]he key here is whether or not the Appellant took her actions with the purpose to defraud another person *who did not authorize this action*." (Emphasis added.) She further argues that the evidence to the court included appellant remaining for the entire transaction, presenting proper identification, and "included facts concerning the drawer of the instrument." She asserts that "[c]learly the State did not meet its burden ... to the underlying charge of forgery." Given appellant's arguments, it is difficult to understand how the dissent concludes that the adversarial presentation of this argument has not been met.

To prove that the check issued was forged, the State relied upon the testimony of an employee of the supermarket, Bruce Avan. He stated that he is employed at a Big Star grocery store in West Memphis. He further testified that, in September 2003, appellant cashed a check made out to her in the amount of $1220 at the store. In order to cash the check, appellant presented her driver's license, a photocopy of which is on the back of the check. According to Mr. Avan, the check was returned by the bank with "Account Closed" stamped on it, and Big Star never recovered the money it paid to appellant.

The State also elicited testimony from Mr. Avan that he had previously dealt with appellant and that "we have had other forgeries from her." Mr. Avan alleged that appellant had been banned from the store but that "she comes anyway." In addition, Mr. Avan related the following incident that occurred after appellant passed the check on the closed account:

> I know that she came back in our store after that and presented another check to be cashed and the assistant manager recognized the name and knew we had problems with her. We had not received the first check back yet. The assistant manager said to me, "let me look at it." [Appellant] said "no, that's okay, I'll just get it cashed somewhere else." She left without letting me see the check.

Officer Bernice Franks, employed by the West Memphis Police Department, CID Division, testified regarding the investigation of the passing of the check. Officer Franks explained that the check presented by appellant was made out to appellant, endorsed by appellant, and had superimposed upon the back of the check a picture of a driver's licensed issued by the State of Arkansas to appellant. The officer also stated that all of that information was on the check when Mr. Avan provided the check to the police. Officer Franks further described attempts to connect appellant with other fraudulent passing of checks but stated that the department could not identify her as the perpetrator. In particular, there was another check drawn on the same entity and cashed at Fidelity National Bank, although the department could never link appellant to the passing of that check.

Appellant testified on her own behalf, and asserted that she earned the $1220 check while working for Gates Cleaning Service in Memphis. Appellant gave a phone number and address for the company, and indicated that she performed cleaning work from

April through early September 2003, and that the check at issue was the last paycheck she received. She stated that her boss was a man named Cedric Yates. Appellant acknowledged that she had committed forgeries in the past and that she has three previous forgery convictions, but maintained that the transaction at issue was legitimate.

■ Given this evidence, we cannot say that the State proved that the check was forged. While Mr. Avan testified that the check was returned stamped "account closed," there was no evidence as to when the account was closed, particularly as to whether the account was closed prior to the date the check was allegedly issued or presented by appellant to the supermarket. In fact, Mr. Avan testified that he did not know the specific date that the store received the check. The State presented no evidence to prove that the check was issued or presented for payment after the date the account was closed. Although the State argues that the evidence permitted the trial court to conclude that appellant presented a check knowing that the bank account was closed, that argument must fail when the record is void of any evidence that the account was closed prior to its issuance or its presentation by appellant to the supermarket.

While the drawing of reasonable inferences from the testimony is for the trial judge as fact-finder, not this court, *Deshazer, supra,* when the record contains no evidence as to when a checking account is closed in relationship to when the check was issued or passed, the record cannot support the inference that the account was closed prior to the issuance or passing of the check. In arguing that this court must defer to the trial court's determination of credibility, the State quotes the trial judge's description of appellant as a "career check passer," and asserts that the court's description suggests that the judge believed this incident to be yet another attempt by her to fraudulently obtain money. The State argues that we must defer to the trial judge's superior position to assess appellant's credibility.

We agree with the State's general proposition regarding permissible inferences from possession of a forged instrument. Possession of a forged instrument by one who offers it without any reasonable explanation of the manner in which she acquired it warrants an inference that the possessor committed the forgery or was an accessory to its commission. *DeShazer, supra. See also McGirt v. State,* 289 Ark. 7, 708 S.W.2d 620 (1986) (holding that "the

crime of forgery was complete upon his being in possession of the forged instrument, or upon his attempt to pass the check, or upon his passing of the check"); *Mayes v. State,* 264 Ark. 283, 571 S.W.2d 420 (1978) (holding that possession of a forged instrument by one who offers or seeks to utter it without any reasonable explanation of the manner in which he acquired it warrants an inference that the possessor committed the forgery or was a guilty accessory to its commission); *see also Faulkner v. State,* 16 Ark. App. 128, 697 S.W.2d 537 (1985).

Nevertheless, before the inference that the possessor of a forged instrument committed the forgery is warranted, the State must first prove that the instrument in question is a forged instrument. While the trial court is not required to believe the accused's explanation of how he or she came into possession of a forged instrument, the trial court may not use its disbelief of the explanation regarding possession of the instrument to infer that the instrument is in fact forged.

 Because the State failed to prove that the check was issued or presented for payment prior to the closure of the bank account upon which it was drawn, the trial court could not reasonably infer that the check was forged. Therefore, we hold that the trial court erred in finding that appellant violated the terms of her probation by passing a forged instrument. Accordingly, we reverse and dismiss.

HART, BIRD, GLOVER and VAUGHT, JJ., agree.

PITTMAN, C.J., ROBBINS, CRABTREE and ROAF, JJ., dissent.

JOHN B. ROBBINS, Judge, dissenting. I respectfully dissent. The majority has reversed the trial court's decision on the basis that the State failed to prove that the check was a forged instrument. Ms. Bedford has not advanced this argument on appeal, and in order to reach its decision the majority has acted as appellant's advocate. It is a familiar rule of practice that an appellate court does not reverse on a ground not argued by the appellant. *Houston v. State,* 82 Ark. App. 556, 120 S.W.3d 115 (2003). This rule is applicable even in cases that are heard de novo on appeal, *see Cummings v. Boyles,* 242 Ark. 923, 415 S.W.2d 571 (1967), and has even been applied in the context of Rule 37.5 appeals following cases where the death penalty has been pronounced. *See, e.g., Echols v. State,* 344 Ark. 513, 42 S.W.3d 467 (2001).

In challenging the State's proof of a forgery on appeal, Ms. Bedford cites *Mayes v. State*, 264 Ark. 283, 571 S.W.2d 420 (1978), where the supreme court held that possession of a forged instrument by one who offers or seeks to utter it without any reasonable explanation of the manner in which he acquired it warrants an inference that the possessor committed the forgery or was a guilty accessory to its commission. In *Mayes*, the supreme court found substantial evidence to support the appellant's forgery conviction where appellant was not named as payee on the check he attempted to pass at a department store, and the appellant left the store while the cashier took the check to the store manager for inspection. In her brief, Ms. Bedford attempts to distinguish this case from *Mayes*, arguing:

> In the Mayes case, the individual left the grocery store before the clerk could verify whether or not the grocery store would accept the check. In this case, the evidence presented to the Court not only included the Appellant remaining for the entire transaction, but that she presented her proper information to the clerk. Additionally, her testimony included facts concerning the drawer of the instrument. These factors clearly set forth a reasonable explanation for the Appellant's actions.

In her brief appellant does not dispute the fact that the check is a forged instrument, but rather asserts that she gave a reasonable and innocent explanation for possessing it. Ms. Bedford makes no claim whatever that the State failed to prove that the check was issued or presented for payment after the date the account was closed, as so found by the majority.

In my view, the issue raised and pertinent inquiry in this appeal is whether Ms. Bedford acted with the intent to defraud. Although the evidence of Ms. Bedford's intent to defraud might not have supported a criminal conviction, I would hold that it was sufficient to support the trial court's determination that the State established a forgery by the preponderance of the evidence.

While Ms. Bedford explained that she earned the check and did not know the account was closed, the reasonableness and sufficiency of appellant's explanation was a matter to be determined by the factfinder, and the trial court had the right to accept or reject the testimony. *See Faulkner v. State*, 16 Ark. App. 128, 697 S.W.2d 537 (1985). The trial court obviously did not find Ms. Bedford's explanation credible. There was testimony by Mr. Avan

that Ms. Bedford had committed prior forgeries at the same store, causing her to be banned. There was also evidence that, on a subsequent occasion, Ms. Bedford attempted to cash a check at Big Star and upon inquiry by the assistant manager she left the store without allowing Mr. Avan to see the check. Intent can seldom be proved by direct evidence and must be inferred from facts and circumstances. *Johnson v. State*, 5 Ark. App. 78, 638 S.W.2d 686 (1982). The trial court described Ms. Bedford as a "career check passer" and believed this to be another attempt to fraudulently obtain money, and I cannot say its finding that she committed forgery was clearly against the preponderance of the evidence. Therefore, I would affirm the revocation of appellant's suspended sentence.

PITTMAN, C.J., CRABTREE, and ROAF, JJ., join in this dissent.