Lori A. STUTZMAN *v.*
BAXTER HEALTHCARE CORPORATION
and Old Republic Insurance Company

CA 06-1159                                             256 S.W.3d 524

Court of Appeals of Arkansas
Opinion delivered May 9, 2007

*Frederick S. Spencer*, for appellant.

*Jones & Harper*, by: *Tom Harper, Jr.*, for appellees.

SAM BIRD, Judge. Lori Stutzman appeals a July 11, 2006 decision of the Workers' Compensation Commission that reversed the administrative law judge's award of benefits and denied her claim for bilateral carpal-tunnel injuries. Stutzman contends that substantial evidence does not support the Commission's finding that she failed to prove the elements necessary to establish her claim, and that the Commission's reversal of the law judge's decision violated her due-process rights under our state and federal constitutions. We affirm.

As the claimant, appellee had the burden of proving a compensable injury by a preponderance of the evidence. Ark. Code Ann. § 11-9-102(4)(E) (Supp. 2005). A "compensable injury" is one "arising out of and in the course of employment."

Ark. Code Ann. § 11-9-102(4)(A). In order to prove a compensable injury the claimant must prove, among other things, a causal relationship between his employment and the injury. *Wal-Mart Stores, Inc. v. Westbrook*, 77 Ark. App. 167, 171, 72 S.W.3d 889, 892 (2002). It is the Commission's function to determine the weight to be afforded to the testimony and medical evidence. *Searcy Indus. Laundry, Inc. v. Ferren*, 82 Ark. App. 69, 110 S.W.3d 306 (2003).

At a hearing conducted before the administrative law judge in November 2005, the parties stipulated that Stutzman had been employed by Baxter Healthcare since April 2004. The evidence that was presented included testimony by Jeff Rowbothen, who was one of Stutzman's supervisors; testimony by Stutzman; and medical records. Rowbothen testified that Stutzman's work involved rapid repetitive motions and that she worked under quotas.

Stutzman testified about her ten years of assembly work at Baxter, the trouble that developed with her hands, and her activities of crocheting and playing computer games. She testified that she also worked "off and on" as a certified nursing assistant, but she denied that her work at a nursing home involved rapid, repetitive, or continuous motion. She admitted, "On paper work that I filled out, I did lie. I said that I was not gainfully employed anywhere else." Under cross-examination Stutzman testified that, for part of the time while she worked at the nursing home, she was drawing short-term disability benefits from Baxter. She stated that she smoked a pack of cigarettes a day and in 1985 had complained to a doctor about her right hand going numb.

Medical evidence introduced at the hearing included a nurse's memo and medical reports from Drs. Richard Burnett, Rick Walker, and J. K. Smelz. The nurse's note stated that Stutzman had an appointment with Dr. Sward on May 11, 1995, that he "splinted her right hand/arm" because she preferred a conservative approach instead of the surgery that he wanted to do, and that she was scheduled for a return visit. A report by Dr. Burnett in January 2002 stated that Stutzman, a patient since 1985, suffered from an ongoing anxiety condition for which medication had been prescribed. In August 2002 Dr. Burnett assessed her with severe depression and chronic obstructive pulmonary disease and tobacco abuse.

In a report of October 2004, Dr. Walker stated with a reasonable degree of medical certainty that "assembly line work at Baxter Healthcare" did not contribute more than fifty percent to

the causation or any aggravation of Stutzman's carpal-tunnel-syndrome symptoms. Dr. Walker wrote:

> Epidemiology studies indicate that age-related factors, female gender, smoking and body mass index as well as cross-sectional area of the carpal tunnel all contribute primarily to carpal tunnel syndrome symptoms. Many studies are now viewing work as being only peripherally related to the causative factor of carpal tunnel syndrome.

Dr. Smelz evaluated Stutzman on August 19, 2005 for her hand and arm complaints, including a "chief complaint" of swelling and numbness in her hands especially when using the computer or telephone. His report stated that the problem was first noted several years after Stutzman began her job at Baxter, where she no longer was working; it related a medical history of chronic obstructive pulmonary disease, smoking, and severe depression; and it noted that she had smoked one-and-one-half packs a day for more than thirty years. Dr. Smelz wrote that electrodiagnostic testing had revealed minimal evidence of distal median neuropathy and that Stutzman's "significant subjective symptoms," which she ascribed to carpal tunnel syndrome, were not usually associated with clinical carpal tunnel syndrome. He reported her statement that her symptoms abated only minimally after she left Baxter and discontinued the repetitive activity she described there. Noting that etiology was a difficult question in carpal-tunnel cases, Dr. Smelz concluded:

> Ms. Stutzman has multiple factors which are known to increase her risk, including increased body mass index, increased wrist ratio bilaterally, right more than left, female gender, post menopausal status, age over 41 years, hand arthritis, and smoking.
>
> She described her work at Baxter as involving repetitive activity, however, this activity as she demonstrated today, involved fine motor coordination and grasping, and not significant and/or prolonged torquing with extreme flexion and extension of the wrist.
>
> Given her multiple inherent risk factors, and reviewing her work history, I do not feel with a greater than 50% certainty, that the previous type of work she described performing would have caused or exacerbated a carpal tunnel syndrome.

The administrative law judge found that Stutzman's carpal tunnel syndrome arose out of and in the course of her employment with appellee Baxter Healthcare Corporation. The Commission,

reversing the decision, determined that Stutzman was not a credible witness and found that her history of numbness and tingling in her hands was "completely inconsistent."

Assessing the evidence, the Commission stated:

> She gave a medical history and initially testified that she began having problems with her hands about a year and a half into her employment with the respondent. However, on cross-examination, the claimant admitted that if company records indicate that she began complaining of hand numbness and related symptoms about six months into her employment with the respondent, this is probably correct. Dr. Walker and Dr. Smelz have both opined that the claimant's job activity with the respondent was not the cause of her hand problems. There is also other evidence to suggest that the claimant's bilateral carpal tunnel syndrome may have resulted from some other source, such as playing computer games, surfing the net, and long-term crocheting, as she has admitted to experiencing hand numbness and related symptoms with her hands during these activities. In addition to this, Dr. Walker and Dr. Smelz have also cited several intrinsic patient factors, which are known to increase the claimant's risk for bilateral carpal tunnel syndrome, which include, her tobacco abuse, hand arthritis, body mass index, post menopausal status, and other age-related factors.

Citing *Dena Construction Co. v. Herndon*, 264 Ark. 791, 575 S.W.2d 155 (1979), the Commission noted that conjecture and speculation cannot be permitted to supply the place of proof. The Commission concluded that speculation and conjecture would be required to causally link Stutzman's carpal tunnel syndrome to her work activity.

### Compensability of Stutzman's Claim

In her first point on appeal, Stutzman asserts that "the only evidence in the record" establishes that her carpal tunnel syndrome was caused by her employment activities with Baxter. She points to the administrative law judge's determination that the credible evidence preponderated in her favor, and she disputes Baxter's allegations that her injury was caused by other activities and factors.

When reviewing a decision of the Arkansas Workers' Compensation Commission, the appellate court views the evidence and all reasonable inferences deducible therefrom in the light most

favorable to the Commission's findings and affirms that decision if it is supported by substantial evidence. *Parker v. Atlantic Research Corp.*, 87 Ark. App. 145, 151, 189 S.W.3d 449, 452–53 (2004). Substantial evidence is relevant evidence that a reasonable mind might accept as adequate to support a conclusion. *Id.* The issue is not whether this court might have reached a different result from the Commission; the Commission's decision will not be reversed unless it is clear that fair-minded persons could not have reached the same conclusions if presented with the same facts. *Horticare Landscape Mgmt. v. McDonald*, 80 Ark. App. 45, 89 S.W.3d 375 (2002); *Wheeler Constr. Co. v. Armstrong*, 73 Ark. App. 146, 41 S.W.3d 822 (2001). When a claim is denied because a claimant failed to show entitlement to compensation by a preponderance of the evidence, the substantial-evidence standard of review requires that we affirm if the Commission's opinion displays a substantial basis for the denial. *Marshall v. Madison County*, 81 Ark. App. 57, 98 S.W.3d 452 (2003).

Here, the Commission determined that Stutzman was not a credible witness, and it noted the medical opinions of Drs. Walker and Smelz that her work activity at Baxter did not cause or aggravate her carpal tunnel syndrome. Because it is the Commission's function to determine the credibility of witnesses and the weight of the evidence, we hold that its decision displays a substantial basis to deny this claim.

### Constitutional Arguments of Due Process

Stutzman contends as her second point on appeal that, because the Commission did not have the opportunity to personally observe her testimony or that of her supervisor, her due-process rights were violated by the Commission's reversal of the administrative law judge's determinations. This issue is not developed in her brief, nor has she abstracted any arguments raised to the Commission. Her entire argument consists of a footnote quoted from *Kimbell v. Association of Rehab Industry*, 366 Ark. 297, 235 S.W.3d 499 (2006), in which our supreme court expressed a willingness to address the issue of whether a constitutional violation occurs when the Commission and reviewing court are permitted to ignore the findings of the law judge, the only adjudicator who sees and hears witnesses.

Where an appellant fails to make a convincing argument or to cite convincing authority in support of it, we will not address the argument on appeal. *Jones Truck Lines v. Pendergrass*, 90

Ark. App. 402, 206 S.W.3d 272 (2005). We also note that we thoroughly addressed this argument in *Stiger v. State Line Tire Service*, 72 Ark. App. 250, 35 S.W.3d 335 (2000), and we concluded that the Commission's substitution of its own credibility determinations for those made by the administrative law judge does not deny due process.

Affirmed.

PITTMAN, C.J., and GRIFFEN, J., agree.